IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

JOANN SNELBAKER,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

No. C16-2020

RULING ON JUDICIAL REVIEW

TABLE OF CONTENTS

I.    INTRODUCTION ................................... 1

II.   PRINCIPLES OF REVIEW ............................ 2

III.  FACTS ......................................... 3

IV.  CONCLUSIONS OF LAW ............................ 5
    A.   ALJ's Disability Determination ..................... 5
    B.   Objection Raised By Claimant ...................... 7
    C.   Reversal or Remand ............................ 13

V.    CONCLUSION .................................. 13

VI.  ORDER ....................................... 14

I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Joann Snelbaker on March 21, 2016, requesting judicial review of the Social Security Commissioner's decision to deny her applications for Title II disability insurance

benefits and Title XVI supplemental security income ("SSI") benefits.[1] Snelbaker asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits and SSI benefits. In the alternative, Snelbaker requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

The Commissioner's final determination not to award disability insurance benefits following an administrative hearing is subject to judicial review. 42 U.S.C. § 405(g). The Court has the authority to "enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." *Id.* The Commissioner's final determination not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3).

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014). In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." 42 U.S.C. § 405(g). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012)

---

[1] On August 30, 2016, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

2

In *Culbertson v. Shalala*, the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

30 F.3d 934, 939 (8th Cir. 1994). In *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). *See also Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

### III. FACTS

Snelbaker was born in 1970. She completed the eighth grade. While in school, she was enrolled in special education courses. In the past, Snelbaker worked as a CNC machine operator, machine packager, home attendant, and satellite installer.

Snelbaker filed her applications for disability insurance benefits and SSI benefits on October 10, 2012, alleging disability due to learning disabilities, bipolar disorder, shoulder injuries, fibromyalgia, and seizures. She alleged she became disabled on April 1, 2010. Her applications were denied upon initial review, and on reconsideration. On June 11,

2014, Snelbaker appeared via video conference with her attorney before Administrative Law Judge ("ALJ") Eric S. Basse for an administrative hearing.[2] In a decision dated September 18, 2014, the ALJ denied Snelbaker's claims. The ALJ determined Snelbaker was not disabled and not entitled to disability insurance benefits or SSI benefits because she was functionally capable of performing work that exists in significant numbers in the national economy. Snelbaker appealed the ALJ's decision. On January 21, 2016, the Appeals Council denied Snelbaker's request for review. Consequently, the ALJ's September 18, 2014 decision was adopted as the Commissioner's final decision.

On March 21, 2016, Snelbaker filed the instant action for judicial review. A briefing schedule was entered on May 27, 2016. On August 28, 2016, Snelbaker filed a brief arguing there is no substantial evidence in the record to support the ALJ's finding that she is not disabled and that she is functionally capable of performing other work that exists in significant numbers in the national economy. On September 14, 2016, the Commissioner filed a responsive brief arguing the ALJ's decision was correct and asking the Court to affirm the ALJ's decision.

Additionally, on August 10, 2016, the parties filed a joint statement of facts addressing Snelbaker's background, the case's procedural history, testimony from the administrative hearing, and Snelbaker's medical history. *See* docket number 11. The parties' joint statement of facts is hereby incorporated by reference. Further discussion of pertinent facts will be addressed, as necessary, in the Court's consideration of the legal issues presented.

---

[2] At the administrative hearing, Snelbaker was represented by attorney Laura Seelau. On appeal, she is represented by attorneys Corbett A. Luedeman and Thomas A. Krause.

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined Snelbaker was not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014). The five steps an ALJ must consider are:

> (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

5

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "'bears the burden of demonstrating an inability to return to [his] or her past relevant work.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "'the claimant has the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with [his or] her impairments and vocational factors such as age, education, and work experience.'" *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a)(1); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or] her limitations.'" *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined Snelbaker had not engaged in substantial gainful activity since April 18, 2012.[3] At the second step, the ALJ concluded from the medical evidence Snelbaker had the following severe impairments: fibromyalgia syndrome, degenerative disc disease, obesity, bilateral rotator cuff tears status-post repair/tendinopathy, bipolar affective disorder, learning disorder, panic disorder, generalized anxiety disorder, ADHD, PTSD, borderline personality disorder,

---

[3] In her applications, Snelbaker alleged a disability onset date of April 1, 2010. However, on January 17, 2012, Snelbaker applied for disability insurance benefits and SSI benefits. The applications were denied initially on April 17, 2012. Snelbaker did not appeal the initial denial. Accordingly, the ALJ determined "the findings of the previous determination are the final and binding decision of the Commissioner through April 17, 2012, the date of the prior unfavorable decision." Administrative Record at 21. The ALJ concluded "the current decision and findings address only the period since April 18, 2012, the first date following the prior final determination." *Id.*; *see also* Joint Statement of Facts (docket number 11) at 3 (providing that the parties agree with the ALJ's finding regarding Snelbaker's disability onset date).

history of substance abuse, and cavovarus foot deformity. At the third step, the ALJ found Snelbaker did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Snelbaker's RFC as follows:

> [Snelbaker] has the residual functional capacity to perform light work . . . except she could occasionally climb ramps or stairs, balance, stoop, kneel, and crouch. [She] could not climb ladders, ropes or scaffolds, and there could be no crawling. With both arms, [Snelbaker] could reach frequently in all directions except no overhead reaching bilaterally. She needs to avoid concentrated exposure to extremes of heat, cold, vibration or vibrating tools, and hazardous conditions such as unprotected heights. She needs a job where she could perform simple, repetitive, and routine tasks. She could occasionally interact with the public, coworkers, and supervisors, but in terms of job tasks with the public and supervisors it is basically solitary work. [Snelbaker] should avoid exposure to cleaning chemicals and solvents. [She] could not work at a production-rate pace.

(Administrative Record at 26.) Also at the fourth step, the ALJ determined Snelbaker is unable to perform her past relevant work. At the fifth step, the ALJ determined based on her age, education, previous work experience, and RFC, Snelbaker could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded Snelbaker was not disabled.

### B. Objection Raised By Claimant

Snelbaker argues new and relevant evidence was presented to the Appeals Council raising questions about her IQ and whether she meets Listing § 12.05C. In 1996, when Snelbaker was 25 years old, Dr. Joseph A. Savastio, M.D., a Disability Determination Services ("DDS") consultative physician, found Snelbaker met Listing § 12.05C. Dr. Savastio determined Snelbaker had a history of "subaverage general intellectual

7

functioning with deficits in adaptive behavior" prior to age 22.[4] Dr. Savastio also determined that in 1996, Snelbaker had a valid IQ score between 60 and 70, and a physical impairment which imposed significant work-related limitations.[5] Therefore, according to social security law, Snelbaker met Listing § 12.05C. *See Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006) (providing to meet Listing § 12.05C a claimant must show a valid IQ score between 60 and 70, onset before age 22, and physical impairment imposing additional significant work-related limitations). It is unclear from the record, however, whether Snelbaker received disability benefits for meeting Listing § 12.05C in 1996, prior to her 2012 applications.[6]

In contrast to Dr. Savastio's findings, on March 13, 2012, Dr. George M. Harper, Ed.D., conducted a psychological evaluation for Snelbaker. Dr. Harper administered the Wechsler Abbreviated Scale of Intelligence-Second Edition (WASI-II) test to Snelbaker in order to estimate her intellectual abilities in verbal comprehension and perceptual reasoning. Testing results showed a full scale IQ score of 83. In interpreting the test scores, Dr. Harper opined Snelbaker "functions with borderline intellectual abilities and is achieving academically well within the expected range in regard to the basic skills of reading, written language and math."[7] On the WRAT-4 test, Snelbaker's word reading, sentence comprehension, and spelling had grade equivalents of 6.0, 7.7, and 5.9,

---

[4] *See* Administrative Record at 1100.

[5] *Id.*

[6] In a Field Office Disability Report from January 2012, it appears Snelbaker may have received disability insurance benefits from February 1999 through January 2001, but there is no explanation for why she would have received benefits during this time period, and there is no indication that she received benefits prior to February 1999. *See* Administrative Record at 366.

[7] Administrative Record at 592.

respectively.[8] Snelbaker's math computation was at a grade equivalent of 6.9.[9] Dr. Harper believed with educational assistance, intensive mental health treatment, and individual psychotherapy, Snelbaker would be capable of passing the high school GED examination.

Snelbaker underwent a second abbreviated psychological evaluation on December 12, 2012, with Dr. Seth A. Brown, Ph.D. The Mini-Mental State Examination was administered, and Snelbaker scored in the low average range for intellectual ability. Her greatest area of weakness was mathematical calculations. Dr. Brown noted Snelbaker "reported difficulties throughout school, and she attended only through the eighth grade and has current mathematics and reading problems. This is consistent with her testing conducted in March 2012."[10] Dr. Brown concluded "[g]iven . . . Snelbaker's ongoing cognitive difficulties, it does not appear that she is capable of sustaining competitive full-time employment."[11]

Given the discrepancy between Snelbaker's adult IQ testing in 1996, where she met the requirements of Listing § 12.05C, and her adult IQ testing in 2012, where she did not meet the requirements of Listing § 12.05C, Snelbaker asserts remand is necessary for further development and testing of her IQ, and determination of whether she meets Listing § 12.05C.

An ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that

---

[8] *See id.*

[9] *Id.*

[10] *Id.* at 710.

[11] *Id.*

"'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

Furthermore, an ALJ may order medical examinations and tests when the medical records presented to him or her constitute insufficient medical evidence to determine whether the claimant is disabled. *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) (citation omitted); *see also* 20 C.F.R. § 416.919a(a) ("If we cannot get the information we need from your medical sources, we may decide to purchase a consultative examination."). 20 C.F.R. § 404.1519a(b) provides that "[a] consultative examination [may be purchased] to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision on your claim." *Id.* For example, a consultative examination should be purchased when "[t]he additional evidence needed is not contained in the records of your medical sources." 20 C.F.R. § 404.1519a(b)(1).

Finally, because Snelbaker's argument rests on new evidence submitted to the Appeals Council, the Court considers *Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir. 2000). In *Cunningham*, the Eighth Circuit Court of Appeals explained the effect of new evidence submitted to the Appeals Council for a reviewing court:

> The regulations provide that the Appeals Council must evaluate the entire record, including any new and material evidence that relates to the period before the date of the ALJ's decision. *See* 20 C.F.R. § 404.970(b). The newly submitted evidence thus becomes part of the 'administrative record,' even though the evidence was not originally included in the ALJ's record. *See Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992). If the Appeals Council finds that the ALJ's

> actions, findings, or conclusions are contrary to the weight of the evidence, including the new evidence, it will review the case. *See* 20 C.F.R. § 404.970(b). Here, the Appeals Council denied review, finding that the new evidence was either not material or did not detract from the ALJ's conclusion. In these circumstances we do not evaluate the Appeals Council's decision to deny review, but rather we determine whether the record as a whole, including the new evidence, supports the ALJ's determination. *See Nelson*, 966 F.2d at 366.

*Id.*; *see also Van Vickle v. Astrue*, 539 F.3d 825, 828 (8th Cir. 2008) (The final decision of the Commissioner should be affirmed if the decision "is supported by substantial evidence on the record as a whole, including the new evidence that was considered by the Appeals Council."); *Nelson*, 966 F.2d at 366 ("The newly submitted evidence is to become part of what we will loosely describe as the 'administrative record,' even though the evidence was not originally included in the ALJ's record. . . . If, as here, the Appeals council considers the new evidence but declines to review the case, we review the ALJ's decision and determine whether there is substantial evidence in the administrative record, which now includes the new evidence, to support the ALJ's decision."). In *Riley v. Shalala*, 18 F.3d 619 (8th Cir. 1994), the Eighth Circuit noted that a reviewing court:

> must speculate to some extent on how the administrative law judge would have weighed the newly submitted reports if they had been available for the original hearing. We consider this to be a peculiar task for a reviewing court.

*Id.* at 622.

This is a difficult case to review. Dr. Harper, a consultative examining source, administered an abbreviated IQ test to Snelbaker, and determined she had borderline intellectual functioning. Another consultative examining source, Dr. Brown, also administered an abbreviated test for intellectual ability and determined the results were consistent with the results found by Dr. Harper, but concluded Snelbaker was not "capable

11

of sustaining competitive full-time employment."[12] Finally, medical evidence not presented to the ALJ, but later provided to the Appeals Council as new evidence showed that as an adult, Snelbaker met Listings § 12.05C for intellectual disability based on her IQ score of 60-70, difficulties in school prior to age 22, and physical impairments that affected her work-related abilities.

Having reviewed the entire record, the Court is persuaded that remand is appropriate for further development of the record with regard to Snelbaker's intellectual functioning. The record demonstrates that Snelbaker only completed the 8th grade in school. While in school she was enrolled in special education courses. IQ testing at age 25 revealed a score between 60-70, indicating intellectual disability. Abbreviated IQ testing at age 41 indicated a score of 83, indicating borderline intellectual functioning. Additional testing showed her intellectual abilities in reading and math to be between the 6th and 8th grade levels. A second abbreviated IQ test when Snelbaker was 41, showed borderline intellectual functioning. The consultative examining source who administered the second abbreviated IQ test also determined that due to her mental impairments, Snelbaker was not capable of competitive full-time employment.

Having considered all of these circumstances, including the new evidence submitted to the Appeals Council, the Court concludes remand is necessary to allow the ALJ to fully and fairly develop the record as it pertains to Snelbaker's intellectual functioning and abilities. *See Guilliams*, 393 F.3d at 803 (providing that an ALJ's RFC assessment must be based on all of the relevant evidence). Moreover, on remand, the ALJ should also order a consultative examination that addresses Snelbaker's full adult IQ, intellectual functional abilities, and any intellectual limitations. *See Barrett*, 38 F.3d at 1023 (providing that an ALJ may order medical examinations and tests when the medical records

---

[12] Administrative Record at 710.

presented to him or her constitute insufficient medical evidence to determine whether the claimant is disabled).

## C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to fully and fairly develop the record with regard to Snelbaker's intellectual functioning and abilities.

## V. CONCLUSION

The Court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ must fully and fairly develop the record with regard to Snelbaker's intellectual functioning and abilities, including ordering a

consultative examination that addresses Snelbaker's full adult IQ and any intellectual limitations.

## VI. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this \_\_19th\_\_ day of December, 2016.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA